**Clementina C. Schmidt GRESS, Plaintiff and Appellee,**

v.

**John W. KOCOUREK and Frances Jean Kocourek, husband and wife; Defendants and Appellants,**

and

**Bank of Steele, Defendant.**

**Civ. No. 880052.**

Supreme Court of North Dakota.

Aug. 16, 1988.

---

Schlosser Law Firm, and Keith A. Wolberg, Bismarck, for plaintiff and appellee; argued by James D. Schlosser.

Lundberg, Nodland, Schulz & Lervick, Bismarck, for defendants and appellants John W. Kocourek and Frances Jean Kocourek; argued by Timothy D. Lervick.

MESCHKE, Justice.

John and Frances Kocourek appealed from a summary judgment foreclosing their contract for deed with Clementina Gress. We affirm the judgment but, on remand, direct the trial court to set a new period of redemption.

On February 9, 1985, John and Frances Kocourek contracted to buy 420 acres of agricultural land from Clementina Gress for $130,000. Kocoureks paid $30,000 down and also paid the first annual installment due on January 1, 1986.

When Kocoureks did not pay the installment due on January 1, 1987, Gress sued to foreclose the contract. Kocoureks' answer admitted the amounts due and, as an affirmative defense, "claim[ed] all of the benefits to which they may be entitled pursuant to Chapter 28–29," NDCC.[1]

---

1. NDCC 28–29–04 says:

*"Power of courts when prices are confiscatory.*
—Until the price of farm products produced

Gress moved for judgment on the pleadings, accompanied by her affidavit about amounts due. John Kocourek responded with a brief affidavit, saying:

"Our present inability to make payments is based upon the low agricultural commodity prices in comparison with the cost of production. Due to the present low commodity prices, ... we should be granted a reasonable period of time within which to cure our default and reinstate the Contract, and that a failure to grant such a time period will tend to confiscate our property by forcing a sale of agricultural products upon a ruinous market."

The trial court ordered foreclosure, saying that Kocoureks "will be given until Dec. 31, 1988, to make redemption." Observing that "[t]he power of the Court may be exercised *at any time* it is brought to the attention of the Court that the conditions set forth in Ch. 28–29 exist ... even after a judgment has been entered," (trial court's emphasis), the trial court declined to delay judgment. The trial court ruled that the "conclusory statement" in John Kocourek's affidavit did not show "that a ruinous market exists or that the cost of production exceeds the prices that can be received for crops." But, the trial court stated: "When and if such information is brought to my attention, I will execute a stay order for such period as the circumstances indicate is appropriate."

By a phone call and a confirming letter on April 29, 1987, copied to Kocoureks' lawyer, Gress' lawyer clarified that the trial court intended the right of redemption to extend only to the end of 1987, not 1988. The foreclosure judgment was entered on June 4, 1987. It stated "a reasonable period of redemption until December 31, 1987." But, notice of entry of the judgment was not given until January 5, 1988, after the stated time for redemption was past.

Kocoureks appealed, arguing that their confiscatory-price defense prevented summary judgment and that they had been "deprived" of a time for redemption by the late notice of entry of judgment.

Summary judgment can dispose of a lawsuit without delay if "there is no genuine issue as to any material fact and ... any party is entitled to a judgment as a matter of law." NDR Civ P 56(c). On any matter "constituting an avoidance or affirmative defense" under NDR Civ P 8(c), the party asserting it has the responsibility to set forth specific facts showing that there is a genuine issue for trial on that defense. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, Kocoureks were responsible for showing a genuine issue of material fact on their confiscatory-price defense.

■ Generally, conclusory statements are not enough. "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

in this state shall rise to a point to equal at least the cost of production, in comparison with the price of other commodities in general, entering into the business of agriculture, the supreme court of this state and all district and county courts in this state shall have power, when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause. Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market." NDCC 28–29–05 says:

*"Courts may delay orders in foreclosures.*— Whenever any foreclosure proceeding is pending in any court in this state and the amount of the debt is less than the value of the property involved, and when any order for judgment will have the force and effect of depriving a defendant of his home and confiscating his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same."
NDCC 28–29–06 says:
*"Public policy.*—Any court mentioned in section 28–29–04 may take judicial notice of the situation of producers and laborers when prices of farm products are confiscatory, and upon the ground of public policy may do all things necessary to be done lawfully to carry out the provisions of sections 28–29–04 and 28–29–05."

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." NDR Civ P 56(e).

Applying Rule 56, we have pointed out that "[a]ffidavits containing conclusory statements that are not supported by specific facts are insufficient...." *Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d 596, 598 (N.D.1987). Nevertheless, during the recent, severe depression in the agricultural economy, we have expected our trial courts to be sensitive to submissions in support of the confiscatory-price defenses. *Asbridge, supra; Federal Land Bank of St. Paul v. Halverson*, 392 N.W. 2d 77 (N.D.1986); and *Federal Land Bank of St. Paul v. Thomas*, 386 N.W.2d 29 (N.D.1986). Since courts can "take judicial notice of the situation of producers ... when prices of farm products are confiscatory," NDCC 28–29–06, a strong public policy is embodied in NDCC Ch. 28–29. In keeping with this "strong policy favoring a hearing on the ... confiscatory-price defense," *Asbridge, supra* at 601, we have often directed that evidentiary hearings be held on such defenses even when barely supported. *See,* for example, *Asbridge, id.* ("prices were too low to allow them to recover even half of the cost of production....").

■ But, the trial court correctly discerned that Kocourek's affidavit simply was not sufficient, even by sensitive standards. It generally described "present low commodity prices," but it offered no details. Thus, it did not even attempt a comparison of the per bushel price of any agricultural commodity at the time Kocoureks agreed to the land contract with the price at default. Nor did it compare any price with costs of production between the purchase and default, either for Kocoureks or for producers generally. Nor did it try to describe changes in Kocoureks' financial circumstances. Therefore, we affirm the summary judgment.

However, the trial court may further consider a confiscatory-price defense. As the trial court correctly noted, the powers of the court under NDCC Ch. 28–29 can be exercised "whenever," that is, at any time.

The trial court was receptive to renewal of the defense upon a sufficient showing.

■ Kocoureks also argued that, "[b]y not being served with the Judgment until after the expiration of the redemption period, they were effectively deprived of the time ... to make redemption." We agree. Enforcement of a judgment entirely depends upon notice of its entry. Since 1983, NDR Civ P 62(a) has said that "no execution may issue upon a judgment nor may proceedings be taken for its enforcement until the expiration of 10 days after notice of its entry if the opposing party appeared, ..." NDR Civ P 62, Explanatory Note, at 131 (West 1988). Since no redemption time remained after notice of entry of this judgment of foreclosure, the buyers did not have a proper judicial opportunity to redeem. Therefore, on remand, we direct the trial court to set a new period of redemption.

Generally, it is better practice to set a redemption period on foreclosure of a land contract by indicating a period of time after notice of entry of the judgment, rather than by indicating a certain date. The trial court should do so in this case on remand. Since Kocoureks have benefitted from an additional year's delay as a result of this appeal, the trial court may, of course, exercise its discretion to set a shorter time for redemption than first ordered.

Accordingly, we affirm the summary judgment but direct the trial court to set a new period of redemption.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.